UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

MARY SMITH,                          )
                                     )
          Plaintiff,                 )
                                     )
v.                                   )          NO.: 2:11-CV-356
                                     )
LVNV FUNDING, LLC, *ET AL*.,         )
                                     )
          Defendants.                )

<u>MEMORANDUM OPINION AND ORDER</u>

This Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., case is

before the Court on defendants' Motion for Summary Judgment, [Doc. 99].  In their motion,

defendants LVNV Funding, LLC ("LVNV") and Steve Hawkins ("Hawkins") (collectively

"defendants") seek dismissal of all of plaintiff's claims arising under the FDCPA for failure to

create genuine issues of material fact.[1]  The plaintiff has responded, [Doc. 109], and the matter is

ripe for review.  For the reasons stated below, the motion is GRANTED.

**I. BACKGROUND**

Plaintiff incurred a credit card debt and then defaulted on that debt.  The debt was

eventually assigned to LVNV.  On November 19, 2010, Defendant Hosto filed a collection

lawsuit against the plaintiff in state court on behalf of LVNV.  Attached to the civil warrant was

an affidavit of sworn account signed by Hawkins, an authorized representative of LVNV.  The

warrant stated the amount due was for the principal amount of $4,626.06, plus pre and post

judgment interest accruing at different rates and reasonable attorney's fees of $925.21.  The

---

[1] Defendant Hosto & Buchan, PLLC ("Hosto") has not filed a summary judgment motion.

affidavit stated that the plaintiff owed this amount as of August 1, 2007, the date of assignment.

The suit was non-suited.

The plaintiff alleges that the defendants violated several provisions of the FDCPA[2] by:

> (1) using any false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt, 15 U.S.C. § 1692e;

> (2) falsely representing the "character, amount, or legal status" of the debts, 15 U.S.C. § 1692e(2)(A);

> (3) threatening to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5);

> (4) communicating to any person credit information which is known or which should be known to be false, 15 U.S.C. § 1692e(8);

> (5) using a false representation or deceptive means in an attempt to collect the debts, 15 U.S.C. § 1692e(10);

> (6) using unfair or unconscionable means to collect or attempt to collect a debt, 15 U.S.C. § 1692f; and

> (7) collection of any amount (including interest, fees, etc.) unless such amount was expressly authorized by the agreement creating the debt or is permitted by law, 15 U.S.C. § 1692f(1).

Plaintiff also asserts that LVNV is liable for the acts and omissions of Hosto under the theory of

*respondeat superior.*

## II. STANDARD OF REVEW

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a

---

[2] The parties notified this Court of the similarities and differences between this case and *Bradford v. LVNV Funding, LLC, et al.*, 2:11-CV-291. The plaintiff has made the same claims under the FDCPA with the exception of the damages claimed. In terms of the issues on summary judgment, all issues are the same as those raised in *Bradford*.

motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists

3

cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

## III. ANALYSIS

The FDCPA was passed to eliminate "abusive, deceptive, and unfair debt collection practices." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting 15 U.S.C. § 1692(a)). The Sixth Circuit has noted that the act is "extraordinarily broad" and must be enforced as written, even when eminently sensible exceptions are proposed in the face of an innocent and/or *de minimis* violation. *See Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992). While § 1692e lists a number of examples of false or misleading representations, the text of the statute itself indicates that the examples are not meant to limit its prohibition on the use of false, deceptive or misleading representations in connection with the collection of a debt. 15 U.S.C. § 1692e. Likewise, § 1692f contains the same language, making clear that the examples set forth therein do not "limit[ ] the general application" of its prohibition on the use of unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f. The Seventh Circuit recently observed that the phrase "unfair or unconscionable" used in § 1692f "is as vague as they come." *Beler v. Blatt, Hasenmiller, Leibsker & Moore*, 480 F.3d 470, 474 (7th Cir. 2007).

In assessing whether particular conduct violates the FDCPA, courts apply "the least sophisticated consumer" test to objectively determine whether that consumer would be misled. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006); *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992). The least sophisticated consumer test is designed "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."

*Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008) (quotations and citation omitted).

### A. Civil Warrant and Affidavit

The defendants move for summary judgment regarding causes of action under several FDCPA sections related to defendants' filing of the civil warrant and affidavit. The plaintiff argues that the defendants had no intention of pursuing the merits of the state court case and that collection agencies cannot use the court system for debt collection through the filing of lawsuits having demonstrated no intention of litigating these cases on the merits. Doing so, the plaintiff claims, violates Title 15 United States Code sections 1692e, 1692e(5), and 1692e(10). The plaintiff alleges that the defendants purchase debt and then file the state court suit before properly reviewing any documents received and base the suit on affidavits that are signed by affiant without any personal knowledge of whether the consumer actually incurred the debt. If the consumer challenges the debt, then the defendants nonsuit their state court action. The plaintiff claims that this is the defendants' pattern of practice, for the defendants nonsuited all of the cases before this Court that were consolidated with this case for discovery purposes.[3] Thus, the plaintiff claims that the defendants' business practices are deceptive and misleading to the least sophisticated consumer in violation of the FDCPA. For these contentions, the plaintiff relies upon *Samuels v. Midland Funding, LLC*, 921 F.Supp.2d 1321 (S.D. Ala. 2013) and *LVNV Funding, LLC v. Mastaw*, No. M2011–00990–COA–R3–CV, 2012 WL 1534785 (Tenn. Ct. App. Apr. 30, 2012).

---

[3] Plaintiff's counsel asserts in an affidavit that this pattern has happened "in no less than twenty state court collection actions in which LVNV was the named Plaintiff." [Doc. 117-3, pg. 2]. This Court consolidated this action with 13 other FDCPA actions pending in this Court for discovery purposes. It may be that the defendants nonsuited the state court cases in the other 13 cases pending before this Court and in other cases not pending in this Court. However, the plaintiff has not pointed this Court to any documentation to that effect. Furthermore, the plaintiff has not asked the Court to take judicial notice of that fact based on the record in other cases. As such, the record in this case only shows plaintiff's counsel's assertion to "twenty state court collection actions in which LVNV was the named Plaintiff." This assertion, without more, is not evidence.

5

This Court agrees with Judge Varlan's reasoning in *White v. Sherman Financial Group, LLC, et al.*, -- F.Supp.2d --, 2013 WL 5936679, at *5 (E.D. Tenn. Nov. 4, 2013), a case virtually identical to the one at hand, that the reliance on *Samuels* is misplaced. *Samuels* dealt with a motion under Rule 12(b)(6) and not Rule 56. Also, unlike in *Samuels*, the defendants here attached a sworn affidavit to their state court suit, evidencing an intent to pursue the action. In addition, the only possible evidence in the record pointed to by plaintiff to support his claims that this is a pattern of practice is plaintiff's counsel's affidavit which alleges this has been done in several other cases in which he is involved. No other facts or evidence to support this allegation was contained in this case's record.

This mere scintilla of evidence is neither admissible nor enough to create a genuine issue of material fact. Rule 56(c) states, in part, that affidavits in the summary judgment context must be based on admissible evidence and made by an affiant competent to testify on the matters contained in the affidavit. The affidavit filed here meets neither requirement. *See Moore v. Holbrook*, 2 F.2d 697 (6th Cir. 1993). Even if it were admissible, plaintiff's counsel's testimony that LVNV has voluntarily dismissed "no less than twenty state court collections actions in which LVNV was the named plaintiff" does not create a genuine issue of material fact as to whether LVNV engaged in a pattern and practice of filing state court collection lawsuits without any intent to pursue the action. In addition, there is no evidence in this record of defendants' intent to hire Hosto to file suit on LVNV's behalf without the intention of following through with the action.

Furthermore, *Mastaw* is not persuasive as to the affidavit's alleged misleading nature. *Mastaw* was not a FDCPA case, and it decided only whether affidavits were properly admitted under the business records exception to the hearsay rule. *See* Tenn. R. Evid. 803(6). Plaintiff

alleges that the affidavit was made without sufficient personal knowledge. However, the plaintiff has presented no evidence that the allegations in the affidavit as to the amount of the debt are false or misleading. Again, this Court finds *White* persuasive and relies on its reasoning. 2013 WL 5936679, at *5.

In addition, a recent Sixth Circuit opinion dooms plaintiff's claim that Hawkins' affidavit in the state court collection action was false and misleading. *See Clark v. Main Street Acquisition Corp.*, No. 13-3763, -- Fed. Appx. --, 2014 WL 274469 (6th Cir. January 17, 2014). In the affidavit Hawkins states that he has "personal knowledge" of LVNV's business records "including computer records of its accounts receivables," and those records include records provided by the original creditor to LVNV. [Doc. 12-1, pg. 2]. The plaintiff claims that this gives the false impression that Hawkins has personal knowledge of the affidavit's facts and that the records were LVNV's and the original creditor's properly authenticated documents.

In *Clark*, the plaintiff made these same claims with regard to a very similar affidavit. The Sixth Circuit disagreed, stating, "[The affiant's] claims of personal knowledge referred to Main Street's business records, which included the original lender's records. Such a statement is permitted by the [FDCPA]." 2014 WL 274469 at *4. Such an affidavit is not "inaccurate or misleading," and, even if it was, the "representation was still not material" because the "least sophisticated consumer understands that lenders and debt collectors will by necessity have to rely on business records they may not have personally created . . ." *Id.*

Also similar to *White*, this Court concludes that there is no genuine issue of material fact as to the plaintiff's arguments regarding collection amounts in violation of sections 1692e or 1692f. For the reasons set forth above, the defendants' motion for summary judgment as to these claims is GRANTED.

## B. Licensing Requirement

The defendants also move for summary judgment on plaintiff's claim based on LVNV's failure to obtain a license as a collection service under Tennessee law, in violation of sections 1692e(5), 1692f and 1692f(1). LVNV alleges that a license is not required, relying on the opinion of the Tennessee Collection Service Board ("the Board") through the issuance of a "Clarification Statement" by the Board in January 2009 and reaffirmed by the Board in May 2012 that certain "passive" debt buyers are not deemed a collection service by the Board.[4]

The Tennessee Collection Service Act ("TCSA") provides that "[n]o person shall commence, conduct or operate any collection service business in this state unless the person holds a valid collection service license issued by the board under [the TCSA] or prior state law." Tenn.Code Ann. § 62–20–105(a). Section 103 provides an exception for attorneys and those entities who are collecting solely on those debts incurred in the normal course of business. *Id*. § 62–20–103. The TCSA defines "collection service" as follows:

> . . . any person that engages in, or attempts to engage in, the collection of delinquent accounts, bills or other forms of indebtedness irrespective of whether the person engaging in or attempting to engage in collection activity has received the indebtedness by assignment or whether the indebtedness was purchased by the person engaging in, or attempting to engage in, the collection activity.

Tenn.Code Ann. § 62–20–102(3). In *Smith v. LVNV Funding, LLC*, 894 F.Supp.2d 1045, 1049 (E.D. Tenn. 2012) (Greer, J.), this Court held that the failure to obtain the necessary licensing could give rise to a FDCPA violation for threatening and/or taking legal action which it was not authorized to do, relying on *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010).

---

[4] The Board, which has been delegated authority to promulgate rules concerning the conduct of collection services, *see* Tenn. Code Ann. § 62-20-115(b)(1), does not appear to have been acting under its rulemaking authority when it issued the Clarification Statement but rather offering the Board's "collective opinion on the subject." *See King v. Midland Funding LLC*, No. 2:11-CV-120 (E.D. Tenn. Aug. 30, 2012).

8

Neither party disputes that the lack of a necessary license could give rise to an FDCPA violation. The issue presented here is rather simple in its terms, i.e., is LVNV required to have a state collection service license? If the answer to this simple question is "no," then there can be no FDCPA violation, and LVNV is entitled to summary judgment. The resolution of this simple question has been anything but simple, however, and has been the subject of opinions by at least four district judges in this judicial district, leading to a somewhat confusing set of opinions and what, on the surface, appears to be some disagreement among the judges. As a result, a brief review of these prior decisions would be helpful.

So far as this Court can tell, the issue was first considered by Chief Magistrate Judge Dennis H. Inman in a Report and Recommendation on defendants' motion to dismiss in this and several related cases. In the Report and Recommendation filed on July 14, 2012, Judge Inman recommended that plaintiff's FDCPA claims against LVNV based on its failure to obtain a collection service license prior to the filing of its debt collection lawsuits be dismissed. *See Smith v. LVNV Funding, LLC*, No. 2:11-CV-288, Doc. 46, July 14, 2012. In the Report and Recommendation, Judge Inman considered the question of whether the TCSA requires an entity which purchases unpaid indebtedness from the original creditor for subsequent collection to obtain a license before undertaking collection activity. Without deciding the question, the Magistrate Judge found that the answer was likely "yes." LVNV did not object to this conclusion. The Magistrate Judge further found, however, that the failure to obtain the necessary license did not state a claim for a violation of the FDCPA. Plaintiffs objected to this conclusion and, after briefing, the undersigned sustained plaintiffs' objection and held that "plaintiffs state a cause of action against LVNV under § 1692e(5) on the basis that LVNV was not licensed under the TCSA." *Smith v. LVNV Funding, LLC*, 894 F. Supp. 2d 1045 (E.D. Tenn. 2012).

This Court also addressed the question of whether plaintiffs' allegation that the defendant was not licensed as a collection service pursuant to the TCSA stated a claim upon which relief could be granted in *King v. Midland Funding, LLC*, No. 2:11-CV-120 (E.D. Tenn. August 30, 2012) (Greer, J.).  Plaintiffs alleged in their complaint that Midland had purchased the debt of plaintiffs "for collection" from plaintiffs, that Midland had been assigned all interest in the debt, and that Midland sent collection communications and engaged in further "collection acts" in an effort to collect the debt.  *Id*. at 10.  Plaintiffs claimed that Midland was required to be licensed pursuant to the TCSA, was not so licensed, and violated the FDCPA by taking action it could not legally take.  Midland sought dismissal of the claim under Federal Rule of Civil Procedure 12(b)(6), relying primarily on the assertion that it was a "passive debt buyer" and the Board's Clarification Statement.  The Court denied the motion to dismiss on either of two alternative bases.  First, the Court found plaintiff's allegations to be "more than that Midland is simply a passive buyer of indebtedness" and second, that, even if Midland was simply a buyer of debt which it then takes judicial action to collect, it would still be required to be licensed, noting that nothing in the record suggested that Midland assigned the collection activity to a licensed collection agency or licensed attorney.  *Id*. at 12-13.

United States District Judge Curtis L. Collier addressed the issue in 2013 in another case filed in this division of the court.  In *Robinson v. Sherman Financial Group,* No. 2:12-CV-030 (E.D. Tenn. March 27, 2013) (*Robinson I*), Judge Collier, citing the undersigned's decision in *Smith*, found allegations that "the LVNV Defendants collectively do more than just collect an individual's or its own unpaid accounts" and are "collecting on purchased accounts," sufficient to fall within the TCSA's definition of "collection service" requiring a license and thus sufficient

to state a claim upon which relief could be granted. *Id.*, Doc. 36. As a result, the Court denied the LVNV defendants' motion to dismiss.

Judge Collier further considered the issue in deciding the Robinson parties' cross motions for summary judgment. *Robinson v. Sherman Financial Group*, -- F. Supp. 2d --, 2013 WL 3968446 (E.D. Tenn. July 31, 2013) (Collier, J.) (*Robinson II*). Summary judgment was granted to LVNV on plaintiff's claim that the failure of defendants to obtain a license under the TCSA was a violation of the FDCPA. Rejecting plaintiff's argument that the Court should "rely on its earlier ruling" and plaintiff's attempt to argue that the Clarification Statement only applies to passive debt buyers, the Court found it "undisputed that LVNV is a 'Debt/Judgment Purchaser,'" and that the Clarification Statement was applicable to LVNV. *Id.* at *10-11. Because the plaintiff could not establish a violation of the TCSA, summary judgment was granted on the claim.

Chief United States District Judge Thomas J. Varlan has also addressed the issue. He first did so in *Lilly v. RAB Performance Recoveries, LLC*, No. 2:12-CV-364, 2013 WL 4010257 (E.D. Tenn. August 5, 2013) (Varlan, C.J.). Plaintiff's defaulted debt had been sold to RAB. Buffaloe & Associates, a law firm representing RAB, undertook "to collect the balance due" on the account, sending a collection letter and ultimately filing a civil warrant and affidavit in state court on behalf of RAB. The sworn affidavit was signed by RAB's managing member. Plaintiff alleged numerous violations of the FDCPA, including a violation based on the failure of RAB to obtain proper licensure in compliance with Tennessee law. *Id.* at * 1-2.

RAB sought summary judgment on the licensure claim, arguing that it was not required to have a license because it was not engaged in collection activity since it hired Buffaloe, which is exempt from licensing requirements, to carry out its collection efforts. Plaintiff relied on

*Smith* and the Court, based on RAB's purchase of the debt after default, hiring a law firm to send the collection letter, and filing suit, held that RAB was acting as a collection service subject to the Tennessee licensure requirement. *Id.* at * 5-6. Relying on *Smith* and *Robinson I*, Judge Varlan concluded that, without the required license, RAB may not have been legally able to engage Buffaloe to file a lawsuit on its behalf; thus, a genuine issue of material fact existed as to whether RAB violated the FDCPA. *Id.* at * 7.

Judge Varlan considered the issue again just months later in *White v. Sherman Financial Group, LLC*, -- F. Supp. 2d --, 2013 WL 5936679 (E.D. Tenn. Nov. 4, 2013). Once again plaintiff alleged that LVNV's failure to obtain a license under Tennessee law was a violation of the FDCPA. LVNV sought summary judgment because it hired Buffaloe, which is exempt from licensure requirements, to carry out its collection efforts on plaintiff's debt. LVNV relied on the Clarification Statement. Judge Varlan declined to follow his prior decision in *Lilly* and granted summary judgment on the claim. *Id.* at * 6-7.

The undersigned once again touched on the issue in *Raceday Center, LLC v. RL BB Financial, LLC*, No. 2:11-CV-117, 2013 WL 4500437 (E.D. Tenn. August 21, 2013) (Greer, J.), a non-FDCPA case. There, the Court affirmed the Magistrate Judge's Report and Recommendation that RL BB and its affiliated companies were collection services, and their failure to obtain licensure required by the TCSA prohibited their filing suit to collect the debt at issue in the case. In the course of doing so, the Court reaffirmed its holding in *King v. Midland Funding* and noted its respectful disagreement with *Robinson II*. 2013 WL 4500437, at *1 n.2. The Magistrate Judge had framed the issue thusly in his Report and Recommendation: "Whether the Tennessee Collection Service Act, Tenn. Code Ann. § 62-20-102 (the "Act")

applies to the activities of RL BB Financial, LLC ("RL BB") in attempting to collect the debt allegedly owed . . .?" *Id.* at *2.

Raceday had obtained various bank loans which went into default when Raceday experienced financial difficulties. The bank commenced foreclosure proceedings through an attorney. The bank then agreed to sell the Raceday loan to an affiliate of RL BB and the notes were assigned to RL BB. RL BB continued the foreclosure action through the same attorney and filed a counter-claim seeking a monetary judgment. *Id.* at *3. RL BB asserted that it was not a collection service and therefore not required to be licensed. The Magistrate Judge, relying on *King*, and rejecting RL BB's arguments based on the Clarification Statement, held that TCSA licensing requirements applied to RL BB and "[f]iling the counter-claim without the required license is a violation of the Act." *Id*. at *6. He further held that while the legislature could have excluded companies like RL BB from the requirements of the Act, it chose not to do so,[5] and the "plain language of the statute defines these defendants as unlicensed entities engaging in the 'collection service business.'" *Id.*

Finally, just about three weeks ago, Judge Collier filed his memorandum in *Murr v. Tarpon Financial Corporation*, No. 3:10-CV-372, Doc. 52 (February 10, 2014) (Collier, J.). In *Murr*, Judge Collier granted summary judgment on plaintiff's claim that Tarpon violated the FDCPA when it did not obtain a collection service license. Tarpon had purchased Murr's defaulted note and security agreement along with other assets from Fairway Lending. Some of Fairway Lending's principals were also principals of Tarpon. Fairway Lending sold the assets to generate proceeds to pay down indebtedness of its own. Tarpon hired an attorney to represent it in collecting Murr's debt and a collection letter was sent. After receiving no response, the attorney filed suit in General Sessions Court for Knox County. Judge Collier noted the

---

[5] The Magistrate Judge also noted that "an excellent moral argument could be made that it ***should*** have" done so.

disagreement in the district on the issue, but, relying on *Robinson II*, gave effect to the Clarification Statement, which had by that time been reaffirmed by the Board, and held that, because Tarpon assigned the collection activity to Jones, it was not required to obtain a license. *Murr*, No. 3:10-CV-372 at 2-3, 8-10.

One other case filed and decided in this district bears mention. In *VFC Partners 10, LLC v. Cindy J. Collins*, a non-FDCPA case, Judge David Bunning, United States District Judge for the Eastern District of Kentucky, held that the TCSA did not require the plaintiff to acquire a collection service license where the plaintiff acquired the debt which was the subject of the lawsuit through assignment and then engaged licensed attorneys to attempt collection. The defendant had executed and delivered a guaranty to U.S. Bank guaranteeing payment of two notes executed by Ferry Road Properties. U.S. Bank assigned all its rights in the notes and guaranty to the plaintiff. After the notes were defaulted, plaintiff engaged attorneys and filed a complaint in this court. Of particular note, Judge Bunning held that "Plaintiff [was] not attempting collection on its own; rather it had engaged attorneys . . . to attempt to collection," such that a license under the TCSA was not required. *VFC Partners 10, LLC v. Cindy J. Collins*, No. 3:12-CV-291 (E.D. Tenn. June 7, 2013) (Bunning, J.).

Because of the apparently conflicting decisions in this district and the importance the Board's Clarification Statement has played in many of those decisions, the Court thought it appropriate to require the parties in one of the related cases[6] to address the issue raised by reference to the language of the TCSA itself, rather than focusing on the Clarification Statement. *See Bradford v. LVNV Funding, LLC, et al.*, 2:11-CV-291. The parties filed those briefs, [Docs. 142, 143] and filed responses, [Docs. 145,146]. This Court has considered those arguments in deciding this case.

---

[6] Plaintiffs in all these related cases are represented by the same attorneys.

The facts in this case are undisputed. LVNV is an asset holding company and owns accounts receivable, such as plaintiff's account in this case. Typically, LVNV acquires charged-off consumer debts from one of two entities: Sherman Originator or Sherman Originator III. These entities purchase accounts from original creditors, lenders, and other debt buyers. Here it is unclear whether Sherman Originator or Sherman Originator III purchased plaintiff's charged-off account from the original creditor and transferred the account to LVNV. It is undisputed, however, that the debt was transferred to LVNV in 2007. LVNV has no employees, does not send collection letters, and does not make telephone calls to debtors. LVNV does report credit information to the three major credit reporting agencies.[7]

The plaintiff does not dispute the following facts.[8] All collection activities on the charged-off accounts are undertaken by Resurgent Capital Services, LP ("Resurgent"), a licensed collection agency. Resurgent services and manages the LVNV accounts either directly or through other licensed collection agencies or law firms. Resurgent hired Hosto, a law firm licensed in Tennessee, to collect on plaintiff's account. Hosto decides which collection activities to undertake and determines whether to ultimately file suit. LVNV plays no role in these decisions. In this case, Hosto filed the civil warrant and affidavit of indebtedness and ownership of account, prepared and signed by LVNV's authorized representative, in the General Sessions Court, naming plaintiff as the defendant and LVNV, assignee, as plaintiff. The lawsuit was later nonsuited.

---

[7] This information was admitted to in *Bradford*. In *Bradford*, this fact was established by LVNV's response to plaintiff's request for admission on July 29, 2013, [Doc. 146-2], the deposition testimony of Tonya Henderson on June 26, 2013 notwithstanding. The reporting is actually handled by Resurgent Capital Services. [See Doc. 142-2 at 29].

[8] The plaintiff failed to file a response to the defendants' Statement of Undisputed Facts. Plaintiff's counsel has disputed these facts in other similar cases. However, for the reasons stated in *Sells v. LVNV Funding, LLC, et al.*, 2:11-CV-355, any dispute over these facts is without merit.

The TCSA requires a collection service license before any person may "commence, conduct or operate" a "collection service business." Tenn. Code Ann. § 62-20-105(a). "Collection service" is broadly defined as "engag[ing] in, or attempt[ing] to engage in, the collection of delinquent accounts . . .," regardless of whether the person "engaging in, or attempting to engage in collection activity" acquired the indebtedness by assignment or by purchase. Tenn. Code Ann. § 62-20-102(3). The definition specifically includes:

. . . .

>          (D) Any person who engages in the solicitation of claims or judgments for the purpose of collecting or attempting to collect claims or judgments or who solicits the purchase of claims or judgments for the purpose of collecting or attempting to collect claims or judgments by engaging in or attempting to engage in collection activity relative to claims or judgments.

Tenn. Code Ann. § 62-20-102(3)(D)  Neither "collection" nor "collection activity" is defined in the Act.

It appears beyond dispute that LVNV is a legal entity which purchases accounts or judgments for the purpose of collecting or attempting to collect them. LVNV argues, however, that it does not "engage" in "collection" or "collection activity." More specifically, LVNV argues that it does not involve itself, or take part in, the act of collecting, *i.e.*, securing payment, but rather that all collection/collection activity is undertaken by others, namely, Resurgent, a licensed collection agency, which services and manages all of LVNV's accounts. Plaintiff first made a halfhearted response in *Bradford* that the statute does not require that a person "engage" in collection activity but also includes those who "engage[ ] in the solicitation of claims or judgments for the purpose of collecting or attempting to collect claims or judgments." [Doc. 146

16

at 1].[9]  Plaintiff's reading of the statute is awkward and appears to be contrary to the plain meaning of § 102(3)(D), that is, that the language covers either those who solicit claims or judgments for the purpose of collecting or who solicit the purchase of claims or judgments for the purpose of collecting or attempting "by engaging in or attempting to engage in collection activity" relative to those claims or judgments.  In other words, even if plaintiff is correct, the Act's coverage requires that the entity engage in collection activity.

Plaintiff also argued in *Bradford*, and implicitly here also, that LVNV does engage in collection activity by (1) its reporting to credit reporting agencies, and (2) filing of collection lawsuits as the named plaintiff to seek a judgment it can collect.  Plaintiff cited a host of cases for the proposition that filing a collection lawsuit is collection activity, a largely unremarkable assertion hardly subject to dispute, and LVNV does not really argue otherwise.  Plaintiff also has argued that LVNV cannot insulate itself by hiring others to file suit to collect its debts and that Congress never intended that "a passive" debt buyer avoid liability under the FDCPA by simply hiring a law firm to file suit.  Even assuming that a debt buyer cannot insulate itself from FDCPA liability by hiring others to engage in collection activity, that does not answer the question of whether the Tennessee Legislature intended to require a debt buyer who does not engage in collection activities itself, but rather relies on others, to have a collection service license.

---

[9]  Plaintiff seems to assume that, because LVNV acquires delinquent accounts, it "solicits" those accounts.  That interpretation does not appear to be consistent with the statute.  In other words, under the TCSA, an entity which purchases debt is not necessarily engaged in the "solicitation" of debt.  Rather, the act of solicitation is something conducted by a "solicitor," defined in the Act as "any individual who is employed by or under contract with a collection service to solicit accounts or sell collection service forms or systems on its behalf." Tenn. Code Ann. § 62-20-102(9).

LVNV has relied heavily on the Clarification Statement issued by the Board in January 2009. That statement, issued as the collective opinion of the Board rather than pursuant to the Board's rule making authority, *see* Tenn. Code Ann. § 62-20-115(b)(1), reads:

> It is currently the opinion of the Tennessee Collection Service Board that entities who purchase judgments or other forms of indebtedness will be deemed a "collection service" if they collect or attempt to collect the debt or judgment subsequent to their purchase of the debt or judgment. However, entities who purchase debt or judgments in the manner described above but who do not collect or attempt to collect the purchased debt or judgment, but rather assign collection activity relative to the purchased debt to a licensed collection agency or a licensed attorney or law firm shall not be deemed to be a "collection service."

Tennessee Collection Service Board, *Clarification Statement of the Tennessee Collection Service Board Regarding Debt/Judgment Purchasers and 'Passive' Debt Buyers*, http://www.tn.gov/regboards/collect/documents/CSBCLARIFICATIONSTATEMENTREGARDINGDEBT.pdf. The Board reaffirmed the Clarification Statement in May, 2012 and stated that the statement "would currently stand as written." Both Judge Collier and Judge Varlan have given the Clarification Statement significant weight in light of its reaffirmation by the Board. Yet, the undersigned has been reluctant to do so given the lack of analysis contained in the Board's statement and the lack of formal action by the Board in promulgating the statement, making it of little help in determining the meaning of the Legislature's enactment. Second, the opinion of the Board as to the meaning of the statute is far less important where the statute does not contain technical terms, as is the case here, and where the agency's interpretation does not involve its own rules and regulations, but rather the construction and interpretation of such statute.

Under the unique circumstances of this case, the Court is persuaded by LVNV's argument and holds that an entity that does not engage in collection activities itself but relies on licensed collection agencies and licensed attorneys to conduct those activities[10] need not be licensed pursuant to the TCSA, and LVNV's failure to obtain the license does not constitute a violation of the FDCPA. To the extent prior decisions of the undersigned might conflict with this opinion, they are now overruled.[11]

Several things have convinced the Court that LVNV is correct in this case as it argued in *Bradford*. First of all, the Court agrees with LVNV that LVNV has not "engaged" in collection activity unless it has taken part in, or involved itself directly in, the collection activity and that the licensing requirement applies only to those persons who actually involve themselves in, or take part in, the act of collecting. Second, the Court agrees with LVNV that, from a policy standpoint, requiring LVNV to be licensed and regulated by the state accomplishes little in terms of protecting debtors or clients of collection services, where the entities that do have direct interaction are licensed and state regulated. Indeed, the structure of the Act itself suggests that its primary purpose is to assure the financial responsibility of collection service businesses to protect clients who retain the services of a collection service business from a collection service that is not financially sound.

This conclusion is supported by several of the TCSA's requirements for collection services, such as the requirement that an applicant for a collection service license provide the Board with a current personal or corporate financial statement and a surety bond or certificate of

---

[10]    Although not clear to the Court, this may be what the Board means by a "passive" debt buyer, i.e. one that undertakes no collection activity itself.

[11]    Both of the Court's prior decisions in *Raceday* and *King* are distinguishable from this case, *Raceday* on its facts and *King* procedurally. In *Raceday*, the defendants/counter-plaintiffs were directly involved in collection activity. *King*, on the other hand, was before the Court on a motion to dismiss and the question was whether plaintiff had sufficiently pled a cause of action, not whether a genuine issue of material fact existed, as is the case here.

deposit "conditioned that the applicant shall faithfully and truly perform all agreements entered into with its clients accounting for the net proceeds of all collections in accordance with this chapter . . .," *see* Tenn. Code Ann. §§ 62-20-106(2) and (3)(A) and (B), and requiring an applicant to meet a requirement of financial responsibility and the maintenance of a regular office and "bank accounts with sufficient funds at all times to disburse amounts due clients." Tenn. Code Ann. § 62-20-107. Furthermore, the TCSA provides that upon violation of the conditions of the bond or certificate of deposit assigned, "the injured client may maintain an action in the client's own name on the bond or certificate of deposit of the collection service." Tenn. Code Ann. § 62-20-110.

Finally, to the extent the statute is ambiguous, the Court also agrees with LVNV as it argued in *Bradford* that the statute should be construed in favor of LVNV under the circumstances presented here. The TCSA is a regulatory statute and contains a criminal sanction for a willful violation of the statute or any rule lawfully promulgated by the Board. *See* Tenn. Code Ann. § 62-20-123 (making such violation a Class C misdemeanor punishable, according to Tennessee Code Annotated § 40-35-111(e)(3), by a term of imprisonment of not more than 30 days or a fine not to exceed $50.00 or both). The Court agrees that, in this situation, the rule of lenity requires that the statute be construed in favor of the defendant. *State v. Marshall*, 319 S.W. 3d 558, 563 (Tenn. 2010).

## IV. CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is GRANTED, and plaintiff's complaint will be DISMISSED. In addition, this Court hereby gives notice that it intends to enter summary judgment *sua sponte* on all claims against Hosto. *See Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir. 1984). The parties shall file any briefs regarding

this issue on or before March 24, 2014.  If no briefs are filed by this date, the Court will enter summary judgment on all claims against Hosto for the same reasons stated above.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE